FELTON et al. v. KANSAS CITY, M. & O. RY. CO.

(Court of Civil Appeals of Texas. Austin. Jan. 17, 1912.)

1. RAILROADS (§ 13*)—SUITS AGAINST—STATUS OF RAILROADS.

A railroad, while a public highway, and while performing functions which the state might perform is not an arm of the state, and is not exempt as a state agency from suit by private citizens to compel it to construct its road into a particular city or town.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 26; Dec. Dig. § 13.*]

2. MANDAMUS (§ 148*)—LOCATION OF ROAD—CONSTITUTIONAL PROVISIONS—PERSONS ENTITLED TO SUE.

Under Const. art. 10, § 9, providing that no railroad shall pass within three miles of any county seat without passing through the same, and maintaining a depot therein unless, prevented by natural obstacles, if such town or its citizens shall grant a right of way and sufficient ground for depot purposes, private citizens of a county seat through which a railroad refuses to construct its line, although it passes within three miles thereof and who offered a right of way and depot grounds, can maintain mandamus to compel the railroad to construct its line through the city, the municipal officers failing to act.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 289; Dec. Dig. § 148.*]

3. MANDAMUS (§ 154*)—LOCATION OF ROAD—ACTIONS—PLEADING.

In mandamus to compel a railroad company to construct its line through a county seat, more particularity and certainty is required in the petition than in an ordinary action.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 296–316; Dec. Dig. § 154.*]

4. MANDAMUS (§ 187*)—APPEAL—QUESTIONS PRESENTED BELOW.

Where a demurrer was sustained to the petition for writ of mandamus, and plaintiff refused to amend, he cannot on appeal demand judgment on the pleadings because defendant's answer was not verified, for that branch of the case was not reached in the court below.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 432; Dec. Dig. § 187.*]

5. RAILROADS (§ 47*)—LOCATION OF ROAD—CONSTITUTIONAL PROVISIONS.

Const. art. 10, § 9, providing that no railroad shall pass within three miles of any coun-

ty seat without passing through it, if granted a right of way and if no natural obstacles prevent, must have a reasonable construction, both as to natural obstacles and otherwise.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 47.*]

Appeal from District Court, Tom Green County; J. W. Timmins, Judge.

Mandamus by J. C. Felton and others against the Kansas City, Mexico & Orient Railway Company. From a judgment sustaining a demurrer to the petition, plaintiffs appeal. Reversed and remanded.

In this case the trial court sustained a general demurrer and quite a number of special exceptions to the plaintiffs' petition and the latter declining to amend, the case was dismissed, and the plaintiffs have appealed. The petition was properly verified, and, reads as follows:

"Now comes the plaintiffs in the above entitled and numbered cause, and leave of the court being first had and obtained, and files this their first amended original petition in lieu of their original petition, filed herein May 4, 1911, and in amendment of and in lieu of said original petition, represents as follows, to wit:

"The State of Texas, County of Tom Green. In District Court of Tom Green County, Texas, May term, A. D. 1911. To the Hon. J. W. Timmins, Judge of the district court of Tom Green County, Texas: Your petitioners William Lackey, O. A. Davis, William E. Murphy, Fred Davis, J. D. St. Clair, H. M. Ester, J. C. Felton, Thomas Stonehouse, W. M. Tolson, J. S. Wilson, W. W. Lockhart, S. Steinbaugh, D. B. Steinbaugh, as relators, each of whom reside in and are citizens of the town of Sherwood, Irion county, Texas, who will hereinafter be styled plaintiffs, complaining of the Kansas City, Mexico & Orient Railway Company of Texas with A. E. Stillwell, who resides at Kansas City, Missouri, as president, and N. J. O'Brien, who resides in Nolan county, Texas, as vice president and general manager for the state of Texas, a corporation duly incorporated under the laws of the state of Texas, as respondents, which will hereinafter be styled defendant, and for cause of action represents as follows:

"I. That the plaintiffs herein are inhabitants of and citizens of and property owners and holders in the town of Sherwood, in Irion county, Texas, and have been such each of them during all of the times covering the transactions hereinafter set out and alleged, and specially at the time of the location and construction of the defendant's road as hereinafter alleged, and at the time of the failure and refusal of the defendant to build into and through the town of Sherwood, and locate and establish a depot therein as hereinafter alleged, and at the time of the filing of the original petition herein, and of the filing of this their first amended original petition.

That during all of said times and at the time of filing plaintiff's original petition herein, and at the time of filing its amended petition herein, as well as during all the times covering all of the transactions hereinafter set out and alleged the said town of Sherwood was and is an unincorporated town, and that same was during all of said times and still is the county seat of Irion county, Texas, and has been such county seat continuously for more than ten years past, and was such county seat of Irion county, Texas, at the time of the construction and establishment of the railroad of the defendant as hereinafter alleged, into and through a part of said Irion county, Texas. That the same town of Sherwood at the time of the institution of this suit, and during all of the times covering all the transactions hereinafter set out and alleged, had no municipal organization to represent it, and was during all of said times and still is represented by the citizens, residents, and inhabitants composing said town. That the inhabitants and citizens of said town during all of said times were numerous, aggregating in number some 400 or 500 inhabitants. That it is impracticable to make all of said inhabitants and citizens parties to this suit. That there are many minors and married women inhabitants and citizens of said town who are interested in the matters in controversy herein in common with these plaintiffs, and who are interested in the performance by the defendant of its statutory and constitutional obligation hereinafter set up. That this petition is filed by plaintiffs in their own behalf and on behalf of the said town of Sherwood as an unincorporated town and as the county seat of said Irion county, Texas, and on behalf of each and all of the other citizens, residents, and inhabitants of the said town of Sherwood. That plaintiffs and said town of Sherwood and all other citizens of said town have a joint and common interest in having the defendant locate, construct, and build its railroad into the town of Sherwood, and in having it establish and maintain a depot in said town as hereinafter more particularly set out. By mistake of the draughtsman J. W. St. Clair was mentioned as a citizen of said town and plaintiff herein, when no such person was intended to be so made plaintiff herein as a citizen of said town. That by mistake of draughtsman J. H. Miller was mentioned as a citizen of said town and plaintiff herein, when no such person was intended to be so made a plaintiff, he not being a citizen of said town.

"II. That the Kansas City, Mexico & Orient Railway Company of Texas, defendant herein, is a corporation, duly incorporated under the laws of the state of Texas as a railway corporation, and was such railroad corporation at the time of the construction and establishment of its railway as hereinafter al-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

leged, and during all times covering all of the transactions hereinafter set out and alleged, and is still such railway corporation, duly chartered and incorporated under the laws of the state of Texas with all of the powers, duties and obligations conferred upon and incumbent and devolving upon railway corporations under the laws of the state of Texas. That as such railway corporation it has a railroad established in and through the county of Tom Green, Texas, and is operating a railroad in and through Tom Green county, Texas, with a local agent in said Tom Green county, Texas, representing it, as such railroad corporations, in the city of San Angelo, Tom Green county, Texas, to wit, J. D. Dotterer.

"III. That the said defendant was authorized under its charter to construct and operate a railroad for the transportation of its cars thereon, and of freight and passengers in and through Irion county, Texas, under its said charter as a railroad corporation. Plaintiffs represent and say that it is provided by Constitution, art. 10, § 9, as well as by article 4491 of the Revised Statutes of the state of Texas in force during all of the times covering the transactions hereinafter set out and alleged as follows: 'No railroad hereafter constructed in this state shall pass within a distance of three miles of any county seat without passing through the, same, and establishing and maintaining a depot therein, unless prevented by natural obstacles, such as streams, hills, or mountains, provided such town, or its citizens, shall grant the right of way through its limits and sufficient ground for ordinary depot purposes.' That it became the legal duty and obligation of the defendant under said Constitution and statutes of the state of Texas, to pass through the town of Sherwood, Irion county, Texas, and establish and maintain a depot therein, should the road of said defendant pass within a distance of three miles of said Sherwood, unless the said defendant was prevented by natural obstacles such as hills, streams, or mountains, provided such town or its citizens should grant the right of way through its limits and sufficient ground for ordinary depot purposes to the defendant, and it became the duty of the said defendant, and the said defendant under said Constitution and statute was obliged and compelled and bound to survey a line or route of its road through the same and to establish and locate a depot site therein and survey and locate sufficient grounds for ordinary depot purposes and give the said town as well as its citizens an opportunity to grant the said right of way through the limits of said town and sufficient ground for ordinary depot purposes. That under the law the said defendant had the right to make a survey for its proposed railroad through said town upon such a route and at such a place as it saw proper and as might be necessary to the selection of the most advantageous route as well as a most suitable and proper place for said line and

for the location of its said road and depot and depot grounds.

"IV. That the defendant, under its charter as such a railway corporation and the amendments thereof, duly made and filed in accordance with the laws of the state of Texas, was authorized to build and construct a line of railroad from Sweetwater in Nolan county, Texas, to San Angelo, in Tom Green county, Texas, and from San Angelo, in Tom Green county, Texas, southwest through Irion county, Texas, and under the provisions of its said charter the said defendant was authorized to build into and through the town of Sherwood, the county seat of Irion county, Texas, and to establish and maintain a depot therein and is still under its charter and under the law authorized to do so.

"V. That the defendant as such railway corporation and under and by virtue of the powers conferred in its said charter and amendments thereof, as such railway corporation, did during the years 1910 and 1911, establish, build, construct, and complete a railroad from the city of San Angelo, in the county of Tom Green, state of Texas, into and through a part of the county of Irion, in the state of Texas, and built, established and constructed said railroad within a distance of less than three miles of the said town of Sherwood, an unincorporated town, the county seat of Irion county, Texas, as hereinbefore stated; that the said defendant constructed its said railroad from a point on the east line of Irion county, Texas, in and through that part of said Irion county, Texas, east, and north and west of said town of Sherwood passing by said town of Sherwood, and running to a point some three miles west of said town of Sherwood, where the defendant has established a town called Mertzon.

"VI. That the road of the defendant as built and constructed passes within a distance of less than three miles from the said town of Sherwood, and the said distance does not exceed one and one-fourth miles from the said town of Sherwood. Plaintiffs represent and say that there are no natural obstacles, such as hills, streams, or mountains to prevent the said railroad passing through the said town of Sherwood, and establishing and maintaining a depot therein, that the said defendant is not prevented from passing through said town and establishing and maintaining a depot therein by natural obstacles, such as hills, streams or mountains, that there are no natural obstacles of any kind or character to prevent the said defendant from passing through the said town of Sherwood and. establishing and maintaining a depot thereon.

"VII. That the said defendant can secure, locate, and establish and construct a route into and through said town, which would be and is an entirely feasible and practicable one from a construction and engineering standpoint, that would involve no difficulties in construction other than such as are usu-

ally met with in the construction of lines of railroad in the state of Texas and elsewhere under ordinary and usual conditions. That the said route could be constructed at a cost that would be usual and reasonable for the construction of a railroad or railway line, and there would be nothing unusual or out of the ordinary in the location, establishment or construction of said road, and nothing unreasonable in the cost of its construction into and through said town or its maintenance after construction.

"VIII. That no engineering or other difficulties whatever would be encountered by the railroad companies locating, establishing and constructing said railroad into and through the said town of Sherwood. That no unreasonable cost would be incident thereto.

"IX. That the said town of Sherwood, prior to and at the time of the location and establishment of the defendant's line of railroad, as well as at the time same was constructed, and at the time of all of the transactions alleged in this petition and at the time of the filing suit herein, and at this time, was and is a town of from 400 to 500 citizens and inhabitants; that the limits of said town are shown by the recorded maps in the office of the county clerk of Irion county, Texas, and by the collection of houses of its citizens and inhabitants and the limits of said town as they exist on the ground are perfectly patent and open to the common observation of every one; that there is absolutely no difficulties for any one to ascertain by going upon the ground, the limits of said town as shown by the recorded plots and the collection and aggregation of houses and dwellings of its inhabitants, and the defendant herein could not mistake or misunderstand the limits of said town or the boundaries of said town in making a survey into and through said town and in establishing and locating a depot thereon.

"X. That the said defendant can survey a route into and through said town of Sherwood, and can establish and locate and maintain a depot site therein with sufficient ground for right of way, depot site, and ordinary depot purposes within the limits of said town. That there is sufficient ground within said town for the location of its said line of railway into and through said town, and for a depot site therein, and sufficient ground therein for ordinary depot purposes, at points within said town, which would be perfectly feasible and practicable and proper for a location of such right of way into and through said town, and for the establishment and maintenance of a depot therein and for ordinary depot purposes.

"XI. That the defendant, at the time it located, established and constructed its said line of railroad passing the said town of Sherwood, had the deliberate purpose and intent at each of said times and prior to said location and at all times since said location not to build its said railroad into and through said town of Sherwood and not to establish and maintain a depot therein; that the said railroad was located, established, and constructed and now passes within one and one-fourth miles of the said town of Sherwood, with the deliberate purpose and intent on part of defendant not to build into and through the said town of Sherwood and establish and maintain a depot therein, under any conditions, and with the intention on the part of the said defendant to violate the said provision of the Constitution and statutes of the state of Texas hereinabove mentioned.

"XII. That these plaintiffs for themselves and in the interest of the other citizens of the town of Sherwood before the completion and construction of the defendant's road as herein alleged and before same had passed the town of Sherwood, tendered to the defendant herein a grant of the right of way through the said town and a grant of sufficient ground for ordinary depot purposes therein, which said tender and said offer was refused by the defendant, because it did not intend and never at any time intended to build into said town or establish or maintain a depot therein.

"XIII. That these plaintiffs, in addition to said tender for themselves and on behalf of the said town of Sherwood and other citizens of the said town of Sherwood before the defendant had completed the construction of the said railroad and refuse same passed said town, demanded of said defendant that it survey a line of railroad into and through the said town and demanded of it to locate a deport site therein and select sufficient ground for ordinary purposes therein upon such a route and at such a place as it deemed proper, for a proper location of said road and said depot and land for ordinary depot purposes within said town. That the defendant willfully and intentionally refused to comply with said demand, and gave and offered no excuse or reason for said refusal, refusing said demand without giving any reason or excuse, and willfully and intentionally refused to comply with said demand with the intent and purposes on its part of preventing these plaintiffs herein and the said town of Sherwood and other citizens of the said town from furnishing to it and tendering to it a grant of right of way through said town and sufficient ground for ordinary depot purposes therein, upon the particular route and at place it would desire same, and with the deliberate purposes and intent on its part of evading, setting aside and annulling the said Constitution and statute of the state of Texas.

"XIV. Plaintiffs further represent and say that, in addition to the demands and tenders as hereinbefore set out, that prior to the institution of this suit and prior to the completion of the defendant's railway passing the

said town of Sherwood, and before said defendant had passed said town of Sherwood, these plaintiffs at their own expense had a line of railroad surveyed and located into and through the town of Sherwood connecting with the defendant's line of railway by a civil engineer, John Lackey, at a point near the said town of Sherwood, which said line of railway so surveyed and located into and through the said town of Sherwood was in all respects an entirely feasible and practicable route and line of railroad; that said route as surveyed was a proper survey and location from a proper, practicable, and scientific engineering standpoint; that the railway of the defendant could be established and constructed on the said route so surveyed without encountering any engineering difficulties whatever to them other than the usual ordinary and customary conditions met with in the construction of railways through the state of Texas and other states that it would involve no unreasonable costs to construct same on said line, but would involve only an expenditure for construction and maintenance after construction, the usual ordinary and reasonable costs for the construction and maintenance of railway lines in the state of Texas as well as other states under the usual and customary and ordinary conditions to be met with in ordinary railway construction; that the defendant could build and construct its said railroad on the said line so located and surveyed without encountering any natural obstacles such as hills, streams, or mountains, that would prevent a proper construction of said railroad on said line or that would prevent the said defendant from building its said railroad on said line at the usual and reasonable costs and expenses for the construction of railway lines under the ordinary and usual conditions met with in the construction of railway lines throughout the state of Texas, which said route was surveyed and located before the construction and completion of the defendant's railroad where it passes the said town of Sherwood.

"XV. That the plaintiffs herein, prior to the institution of this suit and on or about the 10th day of April, 1911, made the following written demand in addition to the demands hereinbefore stated of the defendant railway company in terms as follows, to wit:

"'April 10th, 1911. A. E. Stillwell, President, Kansas City, Mexico & Orient Ry. Co. of Texas, Kansas City, Missouri. E. Dickinson, Vice President, Kansas City, Mexico & Orient Ry. Co. of Texas, Kansas City, Missouri. W. W. Colpitts, Chief Engineer, Kansas City, Mexico & Orient Ry. Co. of Texas, Kansas City, Missouri. N. J. O'Brien, Vice President and General Manager, Kansas City, Mexico & Orient Ry. Co. of Texas, Sweetwater, Texas. C. H. Webster, Chief Engineer, Kansas City, Mexico & Orient Ry. Co. of Texas, Sweetwater, Texas. Gentle-

men: As attorneys for the town of Sherwood, the county seat of Irion county, Texas, the following named citizens, residents of said town, to wit, William Lackey, J. H. Miller, O. A. Davis, J. W. St. Clair, William E. Murphy, Fred Davis, J. D. St. Clair, H. M. Ester, J. C. Felton, Thomas Stonehouse, W. M. Tolson, J. S. Wilson, W. W. Lockart, S. Steinbaugh, W. R. Phillips, W. S. Chapman, and on behalf of the other citizens of said town have to say:.

"'(1) The Kansas City, Mexico & Orient Railway Company of Texas is hereby tendered a grant to a right of way through the limits of the said town of Sherwood, and sufficient ground for ordinary depot purposes, upon the route heretofore surveyed into said town by John Lackey, connecting with your railroad already constructed from the city of San Angelo, in Tom Green county, Texas, to the town of Mertzon, in Irion county, Texas. Also tender same to any right of way and depot grounds you are willing to select and adopt within the limits of said town of Sherwood.

"'(2) And the said Kansas City, Mexico & Orient Railway Company of Texas is hereby requested to immediately survey and locate its line of railroad into the said town of Sherwood, and to lay out and survey for said line within the limits of said town of Sherwood, sufficient for a right of way and sufficient ground for ordinary depot purposes within said town, and, upon so doing, a grant will be made to said railway company of the said right of way, and sufficient ground for depot purposes. Said railway company will, of course, locate its route into said town from whatever point you desire on the line of railroad of the said Kansas City, Mexico & Orient Railway Company of Texas, as now constructed east, north, and west of said town from the city of San Angelo, in Tom Green county, to the town of Mertzon, in Irion county, Texas, and also locate said right of way and ground for depot purposes within the limits of said town of Sherwood at such place as said railway company may see proper. The said town of Sherwood and the said parties above named, and other citizens of said town of Sherwood, are ready, willing and able, when so done, to secure and tender you a grant to the right of way and sufficient ground for ordinary depot purposes within said town.

"'Unless we hear from you by return mail so soon as you receive this, indicating your acceptance of this tender, and if not acceptance of this tender, of your willingness and intention to locate a different right of way to the one mentioned and a different ground for ordinary depot purposes, then we will understand by your so doing that you refuse to build your said railroad through said town, and to establish and maintain a depot therein, and will proceed in the courts of Texas to file the necessary proceedings in said courts in an effort to compel said railroad company to build said

railroad through said town and to establish and maintain a depot therein. Snodgrass & Dibrell, Attorneys for the Above-Named, Parties.'

"That the said written demand prior to the institution of said suit and on April 17, 1911, was delivered to E. A. Stillwell, who was at the time a resident of Kansas City, Missouri, and was at the time president of the defendant railway company. That the said written demand prior to the institution of said suit, and on April 27, 1911, was delivered to E. Dickinson, who was at the time a resident of Kansas City, Missouri, and was at the time vice president of the defendant railway company. That the said written demand, prior to the institution of said suit and on April 15, 1911, was delivered to W. W. Colpitts,. who was at the time chief engineer of the defendant railway company, who was at the time a resident of Kansas City, Missouri. That the said written demand prior to the institution of said suit and on April 15, 1911, was delivered to N. J. O'Brien, who was at the time a resident of Sweetwater, Nolan county, Texas, and was at the time the vice president and general manager of the defendant railway company and general manager of all of its business in the state of Texas. That the said written demand, prior to the institution of said suit, and on April 15, 1911, was delivered to C. H. Webster, who resided at Sweetwater, Nolan county, Texas, who was at the time chief engineer of the defendant railway company for the state of Texas. That the said agents and representatives of the said railway company, of whom said demand was made were at the time the proper persons and agents upon whom to make such demand; that it was a part of their duty as such named agents to survey and locate and adopt its lines and to survey and select and adopt a proper route for the location of said lines, and to survey, locate, adopt, and establish its said lines and to survey, locate, adopt, and establish its depot site in the said town of Sherwood, and to survey, locate, select, adopt, and establish the necessary ground for ordinary depot purposes in said town; that such duties were incumbent upon them as a part and parcel of their duties in the respective officers and agencies mentioned, and no other persons other than the parties named had such authority; that the said defendant and the said named parties, in their official capacities named, refused to comply with said requests and demands in toto, and refused to accept the tenders therein made and refused to comply with each and all of the requests and demands therein set out and declined and refused to give these plaintiffs any reason therefor.

"XVI. That the plaintiffs herein further represent and say that they are ready, willing, and able to grant to the defendant herein a right of way in and through said town of Sherwood, and sufficient ground for ordinary depot purposes at any time the defendant will accept same.

"XVII. Plaintiffs further represent and say they are ready, willing, and able to grant to the defendant herein a right of way in and through said town of Sherwood, and sufficient ground for ordinary depot purposes upon the route so surveyed by the said John Lackey or upon any other route the said defendant may see proper to survey, locate and establish through said town, and to sufficient land for ordinary depot purposes in said town at any place the defendant may see proper to select therefor.

"XVIIa. Plaintiffs represent and say that heretofore, to wit, on November 12, 1907, the commissioners' court of Irion county, Texas, at the regular term of said court entered an order and judgment upon the minutes of said court, a copy of which is as follows: On this day comes on to be considered the matter of the crossing and use of the public highways in Irion county, Texas by the Kansas City, Mexico & Orient Railway Company of Texas, at such point as the right of way of said road ran on and across any of said public highways and roads: and it is ordered, adjudged and decreed by the court that the said Kansas City, Mexico & Orient Railway of Texas be and it is hereby granted the right to construct its grade and road on and across such portions of said public highways in the county as its said right of way may intersect, run on, and across.

" 'That at the time of the entry of said order, and at the time of the matters and things herein alleged and at the institution of this suit, and at all times since its institution the said town of Sherwood was and is an unincorporated town and its streets and alleys as such unincorporated town was under the charge, control and supervision of the commissioners' court of Irion county, Texas; that the order of the said commissioners' court has never been set aside and vacated, and is still in full force and effect; that under and by virtue of said order and statutes of this state, the said defendant railway company is authorized to construct its railway on and across the streets and alleys of the said town of Sherwood.'

"XVIII. That if the court should for any reason hold there was and is any failure on part of plaintiffs to make proper demands of defendant to build its road through said town of Sherwood and to establish or maintain a depot therein, or any failure to tender a grant of land for right of way through said town or insufficient ground for ordinary depot purposes or in any other respect in that regard than plaintiffs represent. That the defendant intended during all of said times to locate and establish a town called Mertzon, some three miles south and west of the said town of Sherwood, as rival town to the said town Sherwood, and did not intend

to build through said town of Sherwood, or to establish and maintain a depot in the said town of Sherwood at any time under any circumstances because the going into the said town of Sherwood and establishing and maintaining a depot therein would have lessened the pecuniary profits the defendant expected to realize out of the location and establishment and maintenance of the said town of Mertzon, that the intention of defendant was to build up and boom the said town of Mertzon and secure for it investors and purchasers of town lots in said town, which they knew they would not secure should the said defendant build into the said town of Sherwood, and establish and maintain a depot therein; that it was greatly to the financial advantage of the defendant on account of its pecuniary interests in the sale of town lots in the town of Sherwood for it not to build into the said town of Sherwood and establish and maintain a depot therein; that the defendant will realize great pecuniary advantages by the sale of town lots in said town of Mertzon by its failure to build into the said town of Sherwood, and establish and maintain a depot therein; that it was not necessary for these plaintiffs to demand of the defendant to build into the said town of Sherwood, and to demand of them to build their railroad through said town and to locate and establish a depot and to establish and maintain a depot therein, or to tender said defendants a grant of right of way through said town and sufficient ground for ordinary depot purposes although same was done by plaintiffs, because the said defendants would not have complied with any such demand, and would not have accepted any grant of such right of way with sufficient ground for ordinary depot purposes. That defendant did not at any time intend to survey, locate or build or construct its said railroad through said town of Sherwood or establish or maintain a depot therein under any circumstances or build through said town. That defendant has established such town of Mertzon within a distance of about three miles of the town of Sherwood and to the south and west of Sherwood, and is interested financially in sale of town lots in said town and in the promotion of said town. That N. J. O'Brien was a general manager of the defendant railway company for the state of Texas, from September 1, 1905, to January 17, 1906. And that on January 17, 1906, he was selected vice president and general manager of defendant railroad and has been such ever since. And that as such general manager as a part of his duties, he has the general management and control of the said railway company, in the state of Texas; that as such he has full knowledge of and it was a part of his duty to know the intentions of said railway company, and since the filing of this suit, his depositions have been taken in this said cause under oath, and he has testified under oath as follows, referring to the town of Sherwood and to the intention of the railway company with reference to building into said town of Sherwood: 'It was never the intention to build into said town, due to having to overcome insurmountable physical conditions, line impracticable and nonfeasible.' That the testimony as to defendant's intentions truly stated its intentions and what it did not intend to do.

"Plaintiffs represent and say that in truth and in fact there are no insurmountable physical conditions to overcome, that the line is not impracticable and that it is not nonfeasible, that it is entirely practicable, feasible with no natural obstacles, such as hills, streams, or mountains, and in fact no other natural obstacles that would prevent building into and through said town and establishing and maintaining a depot therein. Plaintiffs represent and say that the real reason of the defendant for not building into said town was an intention to establish and promote the said town of Mertzon, and to realize therefrom and thereby large sums of money by the sale of town lots in said town, which it would not and could not realize if it built its said railroad into and through the said town of Sherwood, and established and maintained a depot therein. And that in truth and in fact it was at no time the intention of the said railway company to build into said town although a grant of right of way through said town and sufficient ground for ordinary depot purposes was made to it. And that it in fact had no intention of so doing, without reference to such grant, and would not have done so if a grant of land had been made on any route it was willing to select and adopt for right of way and ordinary depot purposes.

"XIX. That the defendant has at no time surveyed a route for its line into or through the said town of Sherwood, and has at no time surveyed any site in said town for a depot or any land for depot purposes within said town; that said defendant has not only failed to make any such survey, though requested so to do, but the said defendant has refused to make any such survey at any time, and has located, built, and constructed its line passing the said town of Sherwood without making any such survey, with the deliberate purposes and intent on its part of depriving the said town of Sherwood and citizens of said town of an opportunity to grant to this defendant a right of way through said town and sufficient ground for ordinary depot purposes upon a route that would be acceptable to it for the location of its said road through and depot site and grounds in said town, that its failure to so survey and its failure to comply with the request of the plaintiffs was a part and parcel of a scheme on the part of the defendant to set aside and violate the said Constitution and statutes of the state of Texas.

"XX. That there was situated in the town

of Sherwood at the time of the construction and establishment of the defendant railway and right of way as alleged herein, and is, still situated therein at this time valuable public buildings, to wit, a courthouse of the value of $20,000, a public school building of the value of $6,000, four churches of the value of $3,000, a county jail of the value of $8,000.

"XXI. That these plaintiffs are citizens of the town of Sherwood, as hereinabove stated, and the owners of property in the said town of Sherwood. and that the action of the defendant in not building its line into and through the said town of Sherwood, and in not establishing and maintaining a depot therein, and in refusing to survey and locate a line into said town and in refusing to survey and locate a depot site therein, has inflicted irreparable injury upon plaintiffs, and it has depreciated the value of plaintiffs' property in said town, and if the defendant does not construct its railroad into and through said town and establish and maintain a depot therein, as provided by the Constitution and laws of the state of Texas, such failure will destroy the value of plaintiffs' property and render the same practically valueless, and these plaintiffs will suffer irreparable injuries by reason thereon; that there is no rule or way to measure the damages that will be suffered by these plaintiffs and other citizens and the said town of Sherwood, in the matter of the depreciations of the value of their property and the public buildings hereinabove mentioned, should the said defendant fail to build its railroad into the said town and establish and maintain a depot in said town as required by the laws and Constitution of this state.

"XXII. That unless said defendant should build said railroad into and through said town and establish and maintain a depot therein, these plaintiffs and the other citizens of the town of Sherwood and the town of Sherwood will suffer irreparable injuries. That the nearest depot on the line of defendant as now established and operated by it is about three miles from said town of Sherwood, that the plaintiff and other citizens of the town of Sherwood, and the said town of Sherwood, if the defendant fails to build into and through said town, and establish and maintain a depot therein, will be deprived of the conveniences incident to having the railroad run into said town with the depot established and maintained therein. That they will be deprived by such failure of the conveniences and pecuniary benefits of having the said railway station in said town where they live for receiving and discharging passengers, including these plaintiffs and other citizens of said town in going from and returning to said town on business and pleasure, and the conveniences and pecuniary advantages and benefits of having the railroad run and operated in said town with a station established and maintained therein for the forwarding and delivery of freight of all kinds, including live stock, goods, wares. merchandise, perishable goods and all othei articles that are perishable for want of speedy and prompt delivery, and for the forwarding and delivery of all other kinds of freight and commodities such as are shipped over railroads, that there is no means or rule of law for measuring these damages to plaintiffs and other citizens of said town by reason of being deprived of these conveniences and pecuniary benefits, and that these conveniences and pecuniary benefits are peculiar and personal to these plaintiffs, and these injuries sustained are peculiar and personal to the plaintiffs herein, as well as other injuries and benefits plaintiffs will sustain by failure of the defendant to comply with the said statutes and Constitution, and by its compliance with the said statutes and Constitution.

"XXIII. That if the defendant does not so build and construct its line and establish and maintain its depot, these plaintiffs and the other citizens of the said town will be compelled to undergo and sustain inconveniences and pecuniary expense in going to the said nearest depot of the said defendant to embark on its trains, and in leaving the same, and will be compelled to undergo and sustain inconveniences and pecuniary expense in going to the said nearest depot of the said defendant to embark on its trains, and in leaving the same, and will be compelled to undergo the inconveniences and pecuniary expenses of hauling all kinds of freight and commodities to and from said nearest station to the said town of Sherwood, and will be deprived of all the other conveniences incident to having the said railway company run into and through the said town of Sherwood, and establish and maintain a depot therein.

"XXIV. Plaintiffs further represent and say that the defendant has absolutely refused to comply with the said Constitution and statutes of the state of Texas, though prior to passing said town of Sherwood these plaintiffs have demanded of the defendant so to do, and notwithstanding these plaintiffs have offered and tendered to the said defendant a grant to the right of way through said town, and reasonable ground for depot purposes.

"XXV. These plaintiffs represent and say that the defendant will override and not comply with the said Constitution and statutes of the state of Texas, unless your honor and this honorable court compels defendant so to do, either by your honor's most gracious writ of mandamus or by your honor's most gracious writ of mandatory injunction as hereinafter prayed for. Plaintiffs further represent and say that by reasons of the premises, the defendant owes the statutory and constitutional duty to survey, locate and

143 S.W.—42

establish and construct a railroad to and into and through the said town of Sherwood, Irion county, Texas, and to establish and maintain a depot therein and operate its said line of railroad when so constructed and established, by running its train thereon, it having waived a grant offered for right of way and ordinary depot purposes by reasons of the facts hereinbefore alleged, and if it be held not to have waived same, then that it is the duty of the said defendant, to survey a line of railroad and locate and establish a line of railroad to and into the said town of Sherwood and through the said town of Sherwood, and to survey and locate and establish a depot site therein, and survey sufficient ground for ordinary depot purposes therein, and give the plaintiffs and other citizens of said town an opportunity to tender it a grant of said right of way and reasonable ground for depot purposes in the particular place and upon the particular line the defendant should deem best for railroad purposes, and upon the grant of said right of way by said plaintiffs or the said town of Sherwood, or other citizens of said town, and sufficient ground for ordinary depot purposes being secured and delivered to it to build and construct its railway to, into, and through said town, and to build and construct, establish and maintain a depot therein and operate trains thereon into and through the said town of Sherwood, and if not then to locate, build and construct their said line of railroad to, into, and through the said town of Sherwood, and a depot site therein and sufficient ground for ordinary depot purposes upon the line so constructed by the said John Lackey, provided the plaintiffs herein or the citizens of the said town of Sherwood, or the town of Sherwood, shall secure and tender to the said defendant a grant of said right of way and sufficient ground for ordinary depot purposes upon said line. Plaintiffs represent and say that the defendant still refuses to survey, locate, establish or construct its line of railway through said town, and to survey, locate or establish or maintain a depot therein and sufficient grounds for ordinary depot purposes and will continue to do so, and will not so do unless compelled to do so by your honor's or this honorable court's most gracious writ of mandamus or your honor's or this honorable court's most gracious writ of mandatory injunction, as hereinafter prayed for.

"Plaintiffs further represent and say that the defendant willfully, wrongfully and intentionally fails and refuses to survey a line of railroad into and through said town of Sherwood, and to locate a depot site therein and sufficient ground for ordinary depot purposes with a deliberate purpose and intention on its part of evading, annulling, defeating and overriding the said Constitution and statutes of the state of Texas, hereinbefore referred to and with the specific intention and purpose of preventing the plaintiffs and

the town of Sherwood and the other citizens of said town from tendering a deed to the defendant to the specific land which the said defendant would desire if it should enter and go through said town and establish a depot therein.

"That the defendant is able in every way financially and otherwise to survey and locate a right of way to and into and through said town of Sherwood and to locate, survey and establish a depot site therein and sufficient ground for ordinary depot purposes, and is able financially and otherwise to build and construct and operate a line of railroad to, into and through said town and to build, construct, maintain and establish a depot therein and to operate a line of railroad to and into and through said town of Sherwood, and to fully comply with said Constitution and statute.

"That the defendant is a chartered railroad corporation under the laws of the state of Texas, and in its charter it is provided that the said corporation should exist as such for a period of 50 years, beginning the 20th day of July, 1899, and is authorized under its charter and under the laws to build and construct a line of railroad to and into and through the said town of Sherwood, and to establish and maintain a depot therein and to operate trains over its said road when so constructed.

"Wherefore, premises considered, plaintiffs pray (defendant having answered herein) upon hearing hereof that your honor and this court grant a writ of mandamus herein.

"First. Adjudging, ordering, directing and compelling defendant to survey, locate, establish and construct its railway through the said town of Sherwood and to establish and maintain a depot therein, because its acts has waived a grant of land for right of way and for depot purposes and if not then.

"Second. Adjudging, ordering, directing, and compelling the defendant herein to survey, locate and establish a line of railroad to and through the said town of Sherwood, and to survey, locate and establish a depot site therein, and to survey and locate sufficient ground for ordinary depot purposes therein and give the plaintiffs herein, the said town of Sherwood, and other citizens of said town, an opportunity to furnish and grant to said defendant railway company, a proper grant of said right of way through said town and said depot site and sufficient ground for ordinary purposes and upon a grant being secured or made by the said plaintiffs or the said citizens of said town or said town of Sherwood, then adjudging, ordering, directing and compelling said defendant to build and construct its said line of railroad to, into and through said town and to construct, build, and establish and maintain a depot therein, and to establish, and maintain its said said line of railroad into and through said town, and to operate its trains thereon to, into, and through said town, and for such

further general and special judgments, orders and decrees as may be necessary to compel said defendant railway company to observe and comply with the said Constitution and statutes of the state of Texas, as hereinbefore mentioned, as the court may deem proper and necessary, and in the event your honor or this court holds that a writ of mandamus for any reasons is not proper upon the facts herein alleged to secure a compliance with the said Constitution and statutes of the state of Texas, and the particular and general relief prayed for, then that the plaintiffs herein and the said town of Sherwood and the citizens of said town of Sherwood, be granted a writ of mandatory injunction ordering and compelling and commanding said defendant to do the said matters and things hereinabove specified as prayed for in said writ of mandamus, and as may be necessary to compel the defendant to comply with the said Constitution and statutes of the state of Texas, and for such further orders, and decrees, both general and special, as may be necessary in the judgment of this court to compel the railway company to comply with the said statutes and Constitution of the state of Texas, and for such further and other relief, both general and special, as the plaintiffs may be entitled to both in law and equity under the facts herein stated."

Snodgrass & Dibrell, for appellants. Hill, Lee & Hill, Gregory, Batts & Brooks, and Blanks, Collins & Jackson, for appellee.

KEY, C. J. (after stating the facts as above). [1] Conditions are such as to preclude extended discussion in detail of the numerous questions discussed in the briefs filed by the able counsel of the respective parties in this case. Careful consideration of the arguments and of many of the authorities cited has been given, and we have reached the conclusion that the trial court committed error in sustaining the demurrer and exceptions to the plaintiffs' petition and dismissing the suit. Counsel for appellee have cited cases which hold that a private citizen cannot maintain an action on account of the unlawful removal of a county seat, although such removal may cause a depreciation in the value of such citizen's property located in the city or town from which the seat of county government is unlawfully removed; and it is urged that the principle upon which those cases are founded is applicable to the instant case and fatal to the plaintiffs' suit. We are of opinion that the analogy is not such as to render the cases referred to controlling authority in this case. While railroads are public highways, and the corporations·which operate them are sometimes denominated quasi public corporations, in law they are private corporations; and while they may be properly denominated public service corporations, they are in fact no part of the government, national, state, county or other subdivision. It is true that such companies perform functions which the government might, if it saw proper, perform itself, but when such functions are performed by a private corporation, granted a charter by the government for that purpose, they are not being performed as a part of the government nor by the government's officers and agents. Therefore when it is held that a private citizen cannot maintain an action because of the misconduct of public officers in wrongfully exercising their functions at a place different from that prescribed by law, it does not follow that if a railway company is required by law to construct its road into a particular city or town, a private citizen can have no remedy for a breach of that obligation.

[2] Section 9 of article 10 of the Constitution of this state reads as follows: "No railroad hereafter constructed in this state shall pass within a distance of three miles of any county seat, without passing through same, and establishing and maintaining a depot therein, unless prevented by natural obstacles, such as streams, hills or mountains; provided such town or its citizens, shall grant the right of way through its limits and sufficient ground for ordinary depot purposes."

It is upon this provision of the fundamental law of the state that appellants found their right to maintain this action, and this calls for a construction of that provision, and a determination of the obligations it was intended to impose, and the rights it was intended to secure. No such provision was contained in any former Constitution of this state, and it must be supposed that this change was made in order to prevent what was an existing or anticipated evil. Can any one doubt that the framers of that provision of the Constitution, and the people who by a referendum vote adopted it, intended to so frame the law as to prevent railroads from passing within three miles of county seats without going through the same, if they were furnished the right of way, etc., and if natural obstacles would not prevent? As to the obligation it would be difficult to select language clearer and stronger than the language used. "No railroad hereafter constructed in this state shall pass within a distance of three miles of any county seat without passing through the same," etc., is language so plain, clear, and distinct as to admit of but one construction. Of course, that which follows shows that the obligation placed upon those who might thereafter construct railroads was not an absolute and unconditional obligation, but was dependent upon the nonexistence of preventive natural obstacles, and the willingness of municipalities, or the citizens thereof, to furnish the right of way through such municipalities and sufficient ground for ordinary depot purposes.

But it is contended in argument on behalf of appellee railway company that the constitutional provision referred to was intended for the benefit of the government, state, county or town, and not for the benefit of any private citizen. We cannot yield assent to that contention. The very fact that the constitutional provision in question makes it the duty of railroads to comply with the obligation therein stated, if "such town *or its citizens* shall grant the right of way," etc., shows that the framers of the law were not willing to leave the matter entirely at the discretion of municipal officers, and therefore the provision was so framed as that citizens of the county seat could do that which would create the obligation to pass through the town by furnishing the right of way themselves, regardless of any action of municipal officers.

[3] The special exceptions which were sustained to the petition challenged nearly every averment therein as being too general and lacking in particularity; and while it may be conceded that, in suits of this class, more certainty and definiteness is required in a petition than is required in some other suits, we have reached the conclusion that the objections urged are untenable. It is not practicable to discuss in this opinion all of the objections referred to, and in that respect we content ourselves with saying that it seems to us that the petition alleges with sufficient certainty all the facts necessary to entitle the plaintiffs to relief.

[4] We overrule appellants' contention that they were entitled to judgment for the reason that appellee's answer does not appear to have been sworn to by any one acting for appellee, and that therefore the trial court should have rendered judgment for appellants. That branch of the case was never reached in the court below, and no ruling was made by that court in regard to the sufficiency of appellee's answer, and therefore there is nothing for us to pass upon in that respect. We make no ruling and intimate no opinion as to the sufficiency of appellee's answer in any respect.

While many authorities have been cited and examined, the most analogous case which has come under our observation is Macon Railroad Co. v. Gibson, 85 Ga. 1, 11 S. E. 442, 21 Am. St. Rep. 135, which was a suit in equity asking for a decree to compel the railway company to build its road into the town of Thomaston, and which was decided in favor of the plaintiffs. The statute involved in that case is described as follows in the opinion of the court: "If the railroad runs through Upson county, and within five miles of the town of Thomaston, it shall run into and through the corporate limits of that town, or within one mile of the courthouse, provided it shall not cost the company any more from where the road crosses the five-mile limit on the east of the town to the 'Rogers property' than any other route within that limit; the cost is to be determined by two competent, disinterested civil engineers, one to be selected by the company, and the other by the mayor of Thomaston, to locate the route proposed by the company within the five-mile limit, and the route within the town or within one mile of the courthouse, on a way which is equitable and just both to the company and the town; these engineers are to estimate the cost of building such line, and, if they fail to agree, they are to appoint a third disinterested competent civil engineer who shall decide and determine the matter; in estimating the cost of the respective routes, the safety and permanancy of the roadbeds, and keeping up the same are to be considered; whatever amount the estimate shows it will cost more to go through the corporate limits, or within one mile of the courthouse, than the route proposed by the company within the five-mile limit, shall be paid by the town of Thomaston, or the citizens thereof; upon refusal to pay the same, the company is released from building the road through the corporate limits, or within one mile of the courthouse; a sum equal to such extra cost, if any, is to be paid into some solvent bank of this state when the road is built from the city of Macon to the five-mile limit, subject to be checked out by the company when the road is built through the five-mile limit."

After disposing of certain other questions, the court, speaking through Chief Justice Bleckley, disposed of the gist of the case in the following manner:

"(6) We come now to the question whether the citizens of Thomaston can, by petition in the nature of a bill in equity, invoke judicial aid for the purpose of restraining the company from violating this amendment to its charter, and compelling it to co-operate with them in administering the provisions of the amendment. No doubt the general rule is that the state alone will be heard to complain of a corporation for not conforming to the terms of its charter in matters affecting the public interest; or, at all events, that the Attorney General must be a party to the suit, either plaintiff or defendant. Green's Brice's Ultra Vires, 595, 602. But here the immediate interest involved, and sought to be protected, is not that of the general public, but the special and peculiar interest of the town of Thomaston. The object of the Legislature in preventing the construction of this railroad within five miles of the town, unless it should pass within one mile of the courthouse, was to preserve that town from decline and decay in consequence of having a railroad in the vicinity, but not near enough to hinder some rival or competing town from springing up. The general public might or might not have an interest in the measure, but it is certain that the citizens of Thomaston

have a vital and peculiar interest therein. The amending act contemplates that that interest shall be respected, and provides means for its protection upon the assumption that the company will conform to the terms of the act. These terms create a legal obligation on the part of the company, and it seems to us that a corresponding right in the citizens as a community to have that obligation enforced is created by the act. The refusal of the company to perform its legal duties to the citizens of Thomaston is a wrong to them, and the wrong is of such a nature as to admit of no adequate and appropriate remedy, save a proceeding to compel a specific performance by the company of the requirements of the act. As we have already said, the company can relieve itself and remain free from any duty to the citizens of Thomaston by not constructing its road within five miles of that town, but it cannot come within five miles with its work and not comply with the act. To do so would be a violation of its charter and a special and particular injury to the citizens of the town, who are no less entitled to the provisions of the amended charter made for their special benefit, than the company is to the provisions of the original charter unrepealed, which were made for its benefit. The citizens have as much right to complain of the company for denying them their dues under the charter as the company has, or would have to complain of any citizen for denying it the enjoyment of any if its chartered rights. It is a mistake to suppose that corporations are created alone for their own benefit, or that their privileges are more sacred than their duties. We see not why a local and special duty may not be enforced at the instance and by the suit of the local and special body of citizens recognized in the charter as immediately interested in some of its provisions.

"(7) A further question is whether some of the citizens of Thomaston, suing in behalf of themselves and all their fellow citizens of the town, will be sufficient as parties plaintiff in this proceeding, or whether all the citizens must join as such plaintiffs. The interest being common to all as a community, and the citizens being numerous (of which fact we can take judicial notice from public statistics) we think the case is provided for by a well-recognized rule which has long prevailed in equity, and that some, as representatives of the class, may sue for all. Story's Eq. Pl. § 94 et seq.; Mitf. Eq. Pl. marg. p. 167 et seq.; Spence, Eq. Jur. 656; 1 Daniell, Ch. Pr. 234, 237; Pomeroy, Rem. & Rem. Rights, § 388 et seq.; Hawes on Parties, § 92; 1 Pomeroy, Eq. Jur. §§ 251, 255, 269, 274; Phillips v. Hudson, L. R. 2 Ch. 243; Com'rs, etc., v. Glasse, L. R. 7 Ch. 456; Smith v. Swornstedt, 16 How. 302 [14 L. Ed. 942]. It is true that as only two of the citizens have become parties it is rather a small representation of the whole community; but considering the publicity of the case and of the interest involved in it, and the fact that the suit is located in Upson county, and will be tried, if tried at all, at the county town, which is the town whose citizens are interested, there can be no cause to apprehend that the two plaintiffs on the face of the petition will be disposed, or if so disposed, allowed to misrepresent the community in whose behalf they have brought this suit. No doubt it is somewhat discretionary with a court of equity as to how many representatives of a class will, or ought to be, regarded as a fair representation of the whole class in the given instance. We simply rule that this is a proper case for some of the citizens to represent all, and that the number of representatives, though the smallest that could be recognized, is not, as matter of absolute law, insufficient."

The language quoted from the opinion rendered in that case, and the conclusions reached by that court upon the points therein discussed, are directly in point on the merits of this case, and as the views there expressed meet with the hearty approval of this court, and as the writer feels that he could say little, if anything, that would add to their force, we conclude this opinion without further discussion of the questions therein discussed and decided.

[5] We hold that if the material facts alleged in the plaintiffs' petition are true, the plaintiffs are entitled to whatever equitable relief may be necessary to compel the defendant to comply with the obligation imposed upon it by the Constitution of the state. Whether or not such relief should be granted, and upon what conditions, are matters to be determined by the trial court acting as a chancellor and proceeding in accordance with the rules of equity. But the rules referred to cannot supersede nor limit the constitutional provision heretofore adverted to. However, we do not hold that that provision of the Constitution is to be given a literal and technical construction in reference to the language "unless prevented by natural obstacles, such as streams, hills, or mountains." It may be true, as stated in appellee's brief, that few, if any, natural obstacles render it absolutely impossible to construct a railroad at any particular place, and we do not believe it was the intention of the provision referred to that natural obstacles should not excuse the failure to construct a railroad to a county seat, if it was within the range of possibility to do so. As contended by counsel, that provision, as well as all others, should be given a reasonable construction; and if there are natural obstacles in the way of constructing a railroad into a county seat of such magnitude as to render the construction of the road unreasonable, we think the case would come within

the purview of the Constitution and the road be excused.

For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.